Wanamaker, J.
It is agreed that the sole question in this case, the validity of the ink-marked ballot, finds its answer in the statutes regulating elections in Ohio, particularly Section 5069 et seq., General Code.
*290 Section 5069, General Code, reads:
“All marks upon the ballot must be made by black lead pencil. If an elector soils or defaces a ballot so that it cannot be used, he may successively obtain others, one at a time, not exceeding in all three, upon returning each ballot so soiled or defaced, which shall be immediately destroyed. If an elector who has defaced three ballots satisfies the judges that they were defaced by accident or honest mistake and not for fraudulent purposes, the judges shall deliver him another ballot and help him mark it.”
In conjunction with Section 5069, upon which the judgment below was chiefly based, is to be considered paragraph 9 of Section 5070, which reads:
“No ballot shall be rejected for any technical error which does not make it impossible to determine the voter’s choice.”
The first question to be decided is in brief this:
Is Section 5069, General Code, mandatory, or merely directory, especially the first sentence thereof, which reads: “All marks upon the ballot must be made by black lead pencil.”
It is refreshing to return to some of the old landmarks of the law. Nothing has led to more confusion in the consideration and determination of the law than lack of clear and correct definition of the thing to be considered and determined. That master of legal definition in the English law, Sir William Blackstone, more than a century and a half ago, laid down this definition of law:
“A rule of civil conduct prescribed by the supreme power in a state, commanding whatis right and prohibiting what is wrong.” (1 Blackstone’s Commentaries, 44.)
*291 Our American courts with substantial unanimity have, approved that definition, with this addition, that sucb command and prohibition shall not be in clear conflict with our organic law, our written constitutions.
The law, then, as so defined, clearly constitutes a direct mandate to the people of duty, or a direct prohibition of some act or thing.
In its very essence it must be a requirement and demand, a mandatory order or rule, in order to be of the nature of a law.
The law, civil or criminal, creates liability, and liability cannot be predicated upon those things that are merely advisory, merely directory — only upon those things that are obligatory and mandatory.
It is not unlikely that there is abroad in the land to-day a disposition to regard many of our laws as merely directory, and that it is the right and privilege of the individual citizen to choose those laws that he will obey, and those laws that he will disobey, at his pleasure and without penalty; but the Blackstone idea followed by English and American courts is the only one that can give simplicity and stability to our law, and security to our institutions created and conserved by it.
It may be that in some cases, gathered from the entire context of the law, some provision may be clearly directory or discretionary, and when- so it should be so interpreted and so applied; but this directory character, this optional character, must be clear and convincing.
The language of the statute first in question, “must be made by black lead pencil,” is so plain and so imperative in its force, that it is clearly man *292 datory. To hold otherwise would be in effect to regard it as a mere plaything, a mere pleasure of the voter. If “black lead pencil” is only directory, then the voter is at liberty to use blue pencil, red pencil, or any other kind of pencil, tool, or implement with which he could make a mark. The law then would indeed be only a scrap of paper.
If the statute be wrong, let the legislature that made it amend it. That is neither within the right or the power of this court.
Coming now to paragraph 9 of Section 5070, General Code, which reads:
“No ballot shall be rejected for any technical error which does not make it impossible to determine the voter’s choice.”
It is to be noted that the language is not “No ballot shall be rejected for cmy error which does not make it impossible to determine the voter’s choice,” leaving the clear intention of the voter as the sole test of the ballot; but the error, in order to be disregarded, must be “any technical error.”
If the sole test to a valid or invalid ballot be the determination of the voter’s choice, then any mark, with any pen, pencil, or other instrument, would be quite sufficient in law to warrant the judges in counting the ballot, regardless of the direct and imperative requirement that “all marks upon the ballot must be made by black lead pencil.” No, this section must be construed in connection with the other section dealing with the ballot.
There are three steps in the marking of the ballot:
1. By black lead pencil.
2. By a cross-mark in front of the name to be voted for.
*293 3. Made in the blank space before the name of the candidate.
Suppose the intending voter does not make a complete cross-mark, but only makes three-fourths of it, or two-thirds of it. Suppose he fails to put the cross-mark wholly, within the vacant space, but partly within and partly without the vacant space. Clearly, this would be a technical error, technical departure or variation, and should not invalidate the ballot. But the use of the black lead pencil is made mandatory. The kind of mark, its being or not being a complete cross-mark, or wholly within or without the vacant space or circle, may be a technical departure or error, which in the judgment of the election judges should not invalidate the vote.
Much support is sought for the counting of this black-ink ballot in paragraph 6 of Section 5070, General Code, which reads:
“If the elector desires to vote for a person whose name does not appear on the ticket, he can substitute the name by writing it in black lead pencil or in black ink in the proper place, and making a cross-mark in the blank space at the left of the name so written.”
These general rales to be observed by the voter, relate principally to the ballot as furnished him by fhe_ election authorities. The paragraph of the section last cited, Section 5070, relates to a change in the ticket — which change is to be made by the voter himself — and as to that change the section gives him a choice in the manner of doing two things:
1. He can substitute the name by writing it in the proper place.
*294 2. And making a cross-mark in the blank space at the left of the name so written.
Now, what does the statute say as to what he shall use, or how he shall do these things? It says “by writing it in black lead pencil or in black ink.”
Clearly this is the only instance in which black ink is provided for and authorized in the making and marking of the ballot. The old doctrine is that the express enumeration of one thing to be done is the clear implication that other things not enumerated should not be done; or, bringing it more concretely to the present case, having expressly enumerated that black ink may be used in one place, it follows by clear implication that black ink cannot be used in any other place. The ballot as prepared by the election authorities can be marked only by black lead pencil. The ballot may be amended by the voter writing in a name and marking that name with black lead pencil or black ink. This is the plain phrase and provision of the statute, and must control.
The language of the general assembly being plain and peremptory, there is neither right nor room for this court to construe it. Appeal must be taken to the legislature if a change in the law is needed or demanded.

Judgment reversed.

Johnson, Hough and Matthias, JJ., concur.
Robinson, J., concurs in proposition two of the syllabus and in the judgment.